# TIMOTHY SWEETWINE v. STATE OF MARYLAND

[No. 753, September Term, 1978.]

*Decided March 13, 1979.*

The cause was argued before MOYLAN, COUCH and MACDANIEL, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen H. Sachs, Attorney General,* with whom were *Diane G. Goldsmith, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *H. Gary Bass, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

May a defendant strike a bargain with the State, repudiate that bargain so far as his obligations under it are concerned and yet retain all of the advantages he ostensibly bargained for? The answer is an immediate and absolute, "No." Bargaining in bad faith will not be countenanced, let alone rewarded, on either side of the trial table. Appropriate are the words of Cardozo, "Justice, though due to the accused, is due to the accuser also. . . . We are to keep the balance true." *Snyder v. Massachusetts,* 291 U. S. 97, 54 S. Ct. 330, 78 L. Ed. 674.

The Appellant, Timothy Sweetwine, was indicted by a Baltimore City grand jury for armed robbery (count 1) and simple robbery (count 3), as well as other related charges not here pertinent. Initially, he pleaded guilty to simple robbery and was sentenced to six years imprisonment. In the apparent expectation [1] that he had everything to gain and nothing to lose, he repudiated that plea, claiming on his first appeal to this Court that the plea was involuntary. We reversed, not reaching the merits of voluntariness but simply holding that the record did not adequately reflect that the "plea was voluntarily and intelligently made." *Sweetwine v. State,* (Unreported, Court of Special Appeals, No. 365, September Term, 1977, filed September 14, 1977).

Over strenuous objection, the Appellant was brought to retrial upon the entire indictment and not simply upon the third count charging simple robbery. The State retendered the original plea bargain but the Appellant this time declined it. A Baltimore City jury convicted him of armed robbery and Judge Robert L. Karwacki sentenced him to twenty years

---

1. This expectation was fully revealed in Appellant's argument at the outset of the retrial.

imprisonment. The Appellant now attacks, on double jeopardy grounds, his being forced to stand trial for armed robbery and attacks, on due process grounds, the longer sentence.

The double jeopardy claim is without merit. Putting aside for the moment the question of the conditional nature of arrangements in the tendering of a guilty plea, there was no initial jeopardy as to the armed robbery count in any event. Only the third count was before the court as it began to hear the factual predicate for the plea to that count. No evidence was ever offered with respect to the armed robbery count. Because of the negotiation, it never made it to the trial stage and jeopardy, therefore, never attached. Cf. *Crist v. Bretz,* 437 U. S. 28, 98 S. Ct. 2156, 57 L.Ed.2d 24 (1978). Moreover, the State neither nolle prossed nor in any other way dismissed the armed robbery count. That count remained open. So long as the verdict of guilt as to simple robbery remained intact, of course, the armed robbery count was "dead in the water." This is so because of that aspect of double jeopardy law which prohibits multiple punishment for the "same offense", as "same offense" is defined in *Blockburger v. United States,* 284 U. S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *Newton v. State,* 280 Md. 260, 265-268. The greater charge hovered in a state of suspended animation.

Nor may the Appellant find any succor in *Green v. United States,* 355 U. S. 184, 78 S. Ct. 221, 2 L.Ed.2d 199 (1957) as support for his proposition that the inaction on the greater charge, while the lesser charge was proceeding forward, operated as an "implicit acquittal" on the greater charge. In the *Green* case, a jury had submitted to it, charges of both first-degree murder and second-degree murder. It returned a verdict of guilty of murder in the second degree but was silent as to the first-degree charge. When the second-degree verdict was reversed upon appeal, it was held that upon retrial, the unresolved first-degree charge could not be relitigated because of a double jeopardy bar. The Supreme Court referred to the "implicit acquittal" on the first-degree charge. The best doctrinal explanation for this legal consequence — the factfinder's silence as to the greater offense operating as an "implicit acquittal" as to that offense

4

— is found in that aspect of double jeopardy law barring retrial after a mistrial absent manifest necessity. To discharge a jury with an issue yet unresolved is, in effect, to declare a mistrial as to that issue. This derogates the valued right a defendant enjoys in having the tribunal, once empanelled in his case, remain together until the matter is resolved. Where the jury, on the other hand, indicates that it is hung as to the greater count, a retrial on that count is not barred should the conviction for the lesser offense subsequently be reversed upon appeal. *Selvester v. United States,* 170 U. S. 262, 18 S. Ct. 580, 42 L. Ed. 1029 (1898); *Wallace v. Havener,* 552 F. 2d 721 (1977). This is classic "manifest necessity" under *United States v. Perez,* 22 U. S. (9 Wheat.) 579, 58C, 6 L. Ed. 165 (1824). When the jury is discharged inadvertently, however, without even an inquiry as to whether it is hung, there has been no "manifest necessity" and a retrial would consequently be barred. It is in this sense that the factfinder's silence on a greater charge (when there is a conviction on a lesser charge) is tantamount to an acquittal. In the instant case, there was nothing remotely resembling a submission of the armed robbery charge to a factfinder upon the merits and *Green* is, therefore, totally inapposite.

Going straight to the jugular of the present issue, however, we may ignore the subtle metaphysics of whether jeopardy ever attached as to the armed robbery count and whether such jeopardy (if it existed) ever terminated in the Appellant's favor (implicitly or otherwise). In the context of a negotiated plea of guilty, the whole package of reciprocal arrangements and obligations is conditional. The condition is the continuing good health of the guilty plea. If it is voided,[2] both the defendant and the state return to "square one." They both begin again with a clean slate. The invalidation of the "contract"[3] invalidates all obligations incurred under that contract by either contracting party.

2. Where the State has breached the agreement, of course, the defendant has the option of insisting upon specific performance as an alternative to voiding a plea and beginning anew *Santobello v. New York,* 404 U. S. 257, 92 S. Ct. 495, 30 L.Ed.2d 427 (1971); *State v. Brockman,* 277 Md. 687 (1976).

3. We are using the word metaphorically and are not invoking the formal law of contracts. See *State v. Brockman, supra,* at 277 Md. 697.

With only the Sixth Circuit in lonely isolation, see *Mullreed v. Kropp*, 425 F. 2d 1095 (1970); *Rivers v. Lucas*, 477 F. 2d 199 (1973), the United States Courts of Appeals are in solid agreement as to this conditional nature of the entire guilty plea package of arrangements. Most emphatic is *United States v. Anderson*, 514 F. 2d 583 (7th Cir. 1975). In *Anderson* in the factual context of a bank robbery, the defendant pleaded guilty to a lesser included offense. Going further than in the case now before us, the Government dismissed the greater inclusive charge. The defendant then successfully vacated his plea of guilty. Upon retrial, he was convicted of the greater charge which had earlier been conditionally dismissed by the Government. In affirming that conviction, the Court of Appeals for the Seventh Circuit held, at 587:

> "The Government here did not unequivocally relinquish its right to prosecute Anderson for violating ... [the greater offense]. Instead, it conditionally relinquished this right provided Anderson was convicted of and remained convicted of the ... [lesser] offense. This is in direct contrast to *Green* in which the implicit acquittal on the greater charge was in no sense contingent on the continued viability of the conviction for the lesser offense. When the ... [lesser] conviction was vacated the condition precedent to the Government's agreement not to prosecute no longer existed. The Government was then free to prosecute Anderson for the ... [greater] charge without placing him twice in jeopardy. To hold otherwise is to find that the Double Jeopardy Clause gives the defendant more than the "benefit of his bargain" and ensures that he will not even be placed in jeopardy once under certain circumstances."

The Court of Appeals for the Eighth Circuit dealt with a similar situation in *United States v. Williams*, 534 F. 2d 119 (1976). The defendant there entered a plea of guilty to a lesser charge. The greater charge was formally dismissed upon the motion of the Government. The defendant later successfully

6

attacked his guilty plea and the case was remanded. He was tried by a jury and convicted for the greater offense. As in the case before us, he sought to rely upon *Green v. United States, supra,* for the proposition that he could not be retried for the greater inclusive offense because of the bar against double jeopardy. In dismissing this contention, the Eighth Circuit held, at 121:

> ". . . [A] defendant's jeopardy on the greater charge ends when the first jury is given a "full opportunity" to return a verdict on that charge and instead returns a verdict on the lesser charge only. Neither premise is applicable when the original conviction on the lesser charge follows a guilty plea rather than a trial on both charges.
>
> . . .
>
> "In contrast, Williams was not, in the proceedings in which his guilty plea was accepted, in direct peril of being convicted and punished for violating § 2113(d) and (e). He was not forced to run the gauntlet on those charges. No trier of fact refused to convict him on those charges and none was given the choice between finding him guilty on either those charges or the . . . [lesser] charge. The district judge had the sole options of accepting or rejecting the plea on the . . . [lesser] charge. By accepting it, he made no determination, explicit or implicit, on the merits of the charges not embraced in the plea. There was no implicit acquittal."

An analogous situation came before the Ninth Circuit in *United States v. Wells,* 430 F. 2d 225 (1975). The defendant there was charged on three counts of violating the drug laws. He entered a plea of guilty as to the second count as a result of which the United States Attorney dismissed the first and third counts. In holding that he had successfully attacked his guilty plea, the Ninth Circuit pointed out the adverse consequences that could accrue upon retrial, observing at 230:

> "We have grave doubts as to Wells' wisdom in pressing his motion for leave to withdraw his plea.

If he is ultimately successful, we know of nothing to prevent the government from reviving the two counts that were dismissed by the trial judge.... Wells could thus find himself once more confronted with a possible conviction under Count I, and very severe penalties under that count that he escaped by entering the plea."

The Tenth Circuit addressed a similar issue in *Ward v. Page,* 424 F. 2d 491 (1970). In a close analogue to *Green v. United States,* insofar as the substance of the charges was concerned, albeit quite different so far as the procedural history of the case was concerned, the defendant was indicted for first-degree murder but, before the case was submitted to the jury, he pleaded guilty to the lesser included offense of first-degree manslaughter. In the *Ward* case, the first-degree murder charge had actually been before the jury for two full days when the plea to the lesser charge was suddenly forthcoming. After subsequently and successfully attacking the guilty plea, the defendant was tried and convicted of first-degree murder. The distinction between *Ward* and *Green* is that in *Ward,* the defendant was not denied his right to have the tribunal remain together and resolve the greater charge. The decision to abort the trial as to that charge, by entering the plea, was his own.

A strong consensus in the state courts supports this line of reasoning. *State v. Russo,* 299 So. 2d 40 (Fla. App., 1974); *Clark v. State,* 294 Ala. 485, 318 So. 2d 805 (1974); *People v. Baron,* 130 Ill. App. 2d 588, 264 N.E.2d 423 (1970); *State v. Wolf,* 46 N. J. 301, 216 A. 2d 586 (1966); *State v. Rhein,* 117 N.J. Super. 112, 283 A. 2d 759 (1971); *People v. Wolfson,* 32 App. Div. 2d 813, 302 N.Y.S.2d 217 (1969); *State v. Asimakis,* 86 S. D. 339, 195 N.W.2d 407 (1972); *State v. Stacy,* 43 Wash. 2d 358, 261 P. 2d 400 (1953); *State v. Satterlee,* 58 Wash. 2d 92, 361 P. 2d 168 (1961). But see *People v. McMiller,* 389 Mich. 425, 208 N.W.2d 451 (1973). Cf. *Brockman v. State,* 27 Md. App. 682, 694 (1975).

Judge Karwacki ruled correctly that the Appellant could be tried for the greater offense of armed robbery following his

successful overturning of his guilty plea to the lesser included charge of simple robbery.

The Appellant attacks the twenty-year sentence imposed by Judge Karwacki upon the basis of *North Carolina v. Pearce,* 395 U. S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1959) and the due process clause of the Fourteenth Amendment. *North Carolina v. Pearce* set forth limits "upon the imposition of a more severe punishment after conviction for the same offense at retrial." The purpose of that decision was to prevent vindictiveness by a sentencing judge upon retrial because of the "chilling effect" that such a threat might have upon the exercise of the right to take an appeal.

At the outset, we note that armed robbery and simple robbery are not "the same offense" for sentencing purposes and within the contemplation of *North Carolina v. Pearce,* notwithstanding the fact that for double jeopardy purposes, primarily that aspect of double jeopardy law guarding against multiple punishment, they are treated as "the same offense." In the one context, greater inclusive and lesser included offenses are being analyzed in terms of proper alternative treatment; in the other context, they are being analyzed in terms of prohibited cumulative treatment.

Even if we were dealing with "the same offense", however, there was one dramatic new circumstance present at the time of the second sentencing. That circumstance was that there was no guilty plea. Judge Karwacki well articulated this new state of affairs as he prepared to impose sentence:

> "I should say this preliminarily; I have viewed the setting aside of the robbery conviction as one which in effect voids the entire proceedings which took place before Judge Getty. That is not to say I have not considered the fact he imposed a six year sentence for a third count conviction on the guilty plea where he could have imposed a maximum of ten years. But, it was a result of a guilty plea. It was a result of negotiation, even though the sentence was not negotiated.
>
> "Every defendant who pleads guilty does so in the hope he gets some concession in sentencing. This is

one of the reasons for pleading guilty, especially to a lesser offense. So, it really doesn't give me much help as I approach sentencing in this case. I have to approach this case as if the earlier proceedings in effect never occurred."

As Judge Karwacki then went on to set forth the reasons for the sentence, it is clear from his well considered opinion that he was not motivated by vindictiveness:

"I have to approach this looking to a robbery with a dangerous and deadly weapon of which the defendant stands convicted by jury of his peers who were convinced beyond a reasonable doubt that he did commit this robbery on the streets of this City with a knife, that he not only threatened the victim with the knife, but in fact stabbed him, that the victim required hospitalization for treatment of his injuries, and then look at the prior record of the defendant, who has been before the criminal justice system of this State since 1963, who in 1967 was found guilty of second degree murder and sentenced to seven years imprisonment, from which he received a very early parole two and a half years later; a defendant who in addition to the second degree murder has been guilty of assault, resisting arrest, many disorderly conducts, and I heard no constitutional objection to any of those convictions. Is there any? Is there any suggestion he was not represented by counsel or waived counsel?

* * *

"I'll consider only those for the purpose of my comments. But, given this kind of record I can only conclude that we are dealing here with a very dangerous individual, an individual who, in this case, armed himself with a knife, accosted his victim in the middle of the night, stabbed that victim and robbed him. When the Legislature prescribed the maximum penalty of 20 years for armed robbery, it is hard for me to conceive of a case which is more severe. In

fact, I can't conceive of any. The only thing missing here is the victim didn't die and we would have had a murder indictment rather than armed robbery. The citizens of this City and this State require protection from individuals such as Mr. Sweetwine who would prey upon them, threaten their lives in this manner. I see no reason for any mitigation of the maximum penalty in this case."

The legitimacy of considering the decision to go to trial rather than to plead guilty as an objective reason for imposing a different and less lenient [4] sentence was forcefully enunciated in *United States v. Anderson, supra.* The defendant there sought to rely upon *North Carolina v. Pearce, supra,* and *Blackledge v. Perry,* 417 U. S. 21, 94 S. Ct. 2098, 40 L.Ed.2d 628 (1974), to establish that retrying him upon a greater charge was constitutionally prohibited vindictiveness. The Seventh Circuit pointed out that the change in the plea was a sufficient factor to justify the prosecution on the more serious offense and did not represent vindictiveness, saying at 588:

"In the instant case, however, the Government had never elected on which charge they would try Anderson if the case went to trial. The greater charge had been dropped in return for a plea of guilty to the lesser one. After that plea was vacated the situation reverted to the pre-plea stage. The fact

---

4. It is not to play games with words to distinguish between "less lenient" and "harsher." The difference in the direction of movement is the conceptual key to the whole problem before us. Involved is the proper identification of what is "the norm" and what is "the departure from the norm." The norm is what an appropriate sentence would be following a full-blown trial and conviction. The departure from the norm is the abnormally lenient sentence which is exchanged, in a flat-out *quid pro quo* deal, for the abnormal foregoing of all chance of acquittal and the abnormal foregoing of "his day in court" to which a defendant would be otherwise entitled. It is, therefore, not to "enhance" punishment but simply to return to normal when a sentencing judge, upon remand, forbears abnormal leniency toward a defendant who is no longer delivering that special consideration which "bought" him the abnormal leniency in the first place. It is in this regard that the situation now before us bears no resemblance to that before the Supreme Court in *North Carolina v. Pearce.* It is one thing to punish; it is quite another to deny a reward which has no longer been earned.

that the greater charge was foregone as part of the plea arrangement does not mean that the Government would have prosecuted only the lesser charge originally if not guilty pleas had been entered as to both. *Here we have a situation where there has been a major change other than just an appeal — the defendant had now pleaded not guilty to both charges.* The decision to prosecute him for the more serious offense can on its face be explained in terms other than vindictiveness because of a successful appeal. There is no appearance of retaliation when a defendant is placed in the same position as he was in before he accepted the plea bargain. The mere reinstitution of the ... [greater] charges, under these circumstances, did not amount to a deprivation of Anderson's due process rights." (Emphasis supplied)

Under circumstances doctrinally indistinguishable from those at bar, two recent decisions of the Supreme Court have put the constitutional imprimatur upon the dispensing or withholding of leniency as leverage to induce a plea of guilty. In those cases, the criteria of *North Carolina v. Pearce, supra,* and *Blackledge v. Perry, supra,* were invoked to test the possible "chilling effect" of the threat of harsher treatment upon the very right to stand trial itself. In *Corbitt v. New Jersey,* 439 U. S. 212, 99 S. Ct. 492, 58 L.Ed.2d 466 (1978), the Supreme Court said at 58 L.Ed.2d 474:

"The cases in this Court since Jackson have clearly established that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid. Specifically, there is no per se rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea."

In the present case, the Appellant did not suffer for having taken an appeal. He was placed back in the same position where he had started. The State again offered the same

12

negotiated plea. He refused it and elected to go to trial. In dealing with just such a situation, *Corbitt* said at 58 L.Ed.2d 477:

> "Those cases, as we have said, unequivocally recognize the constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based."

Even sterner measures were under constitutional scrutiny in *Bordenkircher v. Hayes,* 434 U. S. 357, 98 S. Ct. 663, 54 L.Ed.2d 604 (1978). There, during a plea negotiation session, the prosecutor threatened to re-indict on greater charges if the defendant did not plead guilty to the charges then pending. The defendant pleaded not guilty and the prosecutor carried out his threat. In holding that even this was not a constitutionally prohibited "chilling effect", the Supreme Court said at 54 L.Ed.2d 611:

> "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable '— and permissible —' attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' Chaffin v. Stynchcombe, supra, 412 US, at 31, 36 LEd2d 714, 93 S Ct 1977. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty."

There is also a broad policy question at stake. If the prosecutor cannot rely upon the plea bargain, the potential "chilling effect" upon the very institution of plea bargaining could be devastating. Just such considerations were articulated by the United States Court of Appeals for the

Second Circuit in *United States ex rel. Williams v. McMann,* 436 F. 2d 103 (1970). The Second Circuit there said, at 436 F. 2d 106-107:

> " 'For us to hold that one in Williams's position may not be tried and sentenced upon the charge originally brought would encourage gamesmanship of a most offense nature. * * * Indeed, any reason the defendant could conceive for setting aside his plea and sentence would lose him little. If the defendant's argument were to prevail, then a trial on the lesser charge only could result. The defendant would thus run no risks by this maneuver for his trial could end in acquittal, but if he should be convicted, he urges he could not receive a sentence greater than that imposed on the guilty plea to the lesser offense. This is nothing more than a 'heads-I-win-tails-you-lose' gamble. To frustrate this strategy, prosecutors would be restrained from entering plea bargains, thereby adding further to the staggering burdens of our criminal courts, and judges would become more rigid in exercising their discretion in favor of permitting withdrawal of a guilty plea. This would hardly enhance the administration of criminal justice.' "

For the indispensable role now being played by the institution of plea bargaining in the administration of criminal justice, both locally and nationally, see *State v. Brockman, supra* at 692-693 and *Santobello v. New York, supra.*

In a nutshell, the Appellant, with his initial guilty plea, "bought" leniency and then stopped payment on the check. His insistence that he be treated as if he had not stopped payment reeks of disingenuousness. Fundamental due process of law was not offended by Judge Karwacki's sentencing in this case.

The remaining contentions will not detain us long. The Appellant challenges the legal sufficiency of the evidence. In view of the fact that two policemen caught him in the act and testified to that effect, the contention is absurd. The

14

Appellant urges that there was an erroneous amendment of his indictment. The short answer is that the indictment was not amended. The Appellant urges that Judge Karwacki was prejudiced against him. This charge is predicated on an observation made by Judge Karwacki at the disposition hearing that the defendant had managed to make a $10,000 bond and yet was represented, as an indigent, by the Public Defender's office. There is no evidence in the record that Judge Karwacki made any erroneous ruling or evidenced prejudice in any way in his conduct of the trial. The Appellant contends that the trial judge erred in not sustaining his objection to the prosecutor's comment during closing argument. We have reviewed the record and find nothing improper in the argument. It follows, therefore, that Judge Karwacki was not in error in finding to the same effect. The Appellant contends that he was erroneously denied a postponement when he suddenly learned that the State could go forward on the armed robbery charge. The court did adjourn for lunch to give the Appellant time to consider his election. The granting or denying of a postponement is a matter which rests in the sound discretion of the trial judge and we perceive no remote abuse thereof in this case.

*Judgment affirmed; costs to be paid by appellant.*