466 A.2d 69

**Carl L. BANKS**

**v.**

**STATE of Maryland.**

**No. 1878, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Oct. 14, 1983.

**40**

Patrick D. Hanley, Assigned Public Defender, with whom was Alan H. Murrell, Public Defender, on brief, for appellant.

Diane G. Goldsmith, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City, and Robert Scherr, Asst. State's Atty. for Baltimore City, on brief, for appellee.

Argued before MOYLAN, ADKINS and BLOOM, JJ.

ADKINS, Judge.

A chance and brief encounter between two strangers at a Baltimore bus stop in the early morning hours of April 23, 1982, resulted in the death of Ernest Burley and a thirty year prison sentence for the appellant, Carl L. Banks.

During the fleeting moments in which these two confronted one another, Banks initiated a conversation about a pair of boots in the possession of Burley. Burley took offense. In forceful although inelegant language, he told Banks to sheer off. Had the two then attempted to settle their differences with fists or even with bludgeons, probably little of consequence would have occurred. Instead, when Burley unzipped his jacket and appeared to reach inside it, while moving towards Banks, the latter drew a handgun and killed Burley with a single shot through the throat.

The shot that ended Burley's life began a process that concluded with Banks's conviction by a jury of second degree murder and use of a handgun in the commission of a crime of violence. He was sentenced to imprisonment for thirty years for murder and to five years concurrent on the handgun conviction. The path that led to those judgments took several unusual twists and turns, presenting us with questions involving the specific enforcement of a plea agreement to which a judge had bound himself and the double

jeopardy effect of a guilty plea.[1] The facts pertaining to these issues are as follows:

On May 17, 1982, Banks was charged in a single indictment with murder in the first degree (count one), use of a handgun in the commission of a felony or a crime of violence (count 2), and wearing, carrying, and transporting a handgun on his person (count three). On September 28, 1982, there was an off-the-record chambers conference between the prosecution, defense counsel and presiding judge. Although the record is not entirely clear, it seems that Banks was not present.

At the conclusion of the in-chambers meeting, proceedings were had in open court, in the presence of Banks. Defense counsel tendered a plea of guilty "pursuant to plea negotiations under Rule 733 c." [2] In accordance with the rule, the judge inquired as to the terms of the plea negotiations. The prosecutor responded:

> . . . the State is going to recommend that in exchange for the guilty plea to second degree murder, that the sentence of ten years be imposed. The defendant, through counsel, has requested a pre-sentence report. The State will concur with that request, and counsel is free to argue for less time at the sentencing.

Banks was sworn. The judge examined him meticulously, as required by Md.Rule 731 c., to determine that the plea was tendered voluntarily, with full understanding of the nature of the charges and the consequences of the plea. During the course of this examination, the judge also as-

---

**1.** Banks has briefed other issues as well, but the disposition we make of this case renders it unnecessary for us to consider them.

**2.** Section c.1. of Md.Rule 733 provides:
> If a plea agreement has been reached pursuant to subsection a.6. of this Rule for a plea of guilty . . . which contemplates a particular sentence, disposition or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant tenders the plea. The judge may accept or reject the agreement or may defer his decision as to acceptance or rejection until after the pre-sentence proceedings and investigation he deems necessary.

certained that Banks was not then on parole or probation, although no inquiry whatsoever was made about the nature and extent of Banks's prior criminal record, if any.

The judge explained the plea agreement to Banks:

Now, sir, there have been plea negotiations between your lawyer and the State, as I understand it, as follows; in exchange for your guilty plea [to second degree murder] the State is going to, in effect, drop, dismiss all other counts. . . . The State will recommend to this Court a ten year prison sentence, giving you credit for any time you have spent in jail. . . . And your lawyer wants to get a probation report from the Probation Department, and he wants to argue that the sentence should be less than ten years. I understand that's what the plea agreement is. Do you understand that is what it is?

Banks said he did so understand the plea agreement, and also that he understood that if the court accepted his plea of guilty, he could be sentenced to less than ten years, but could be sentenced to imprisonment for the full ten years. After some further explanation of the rights Banks would be giving up by pleading guilty, all of which Banks said he understood, the judge said:

I commit myself to the recommendation, that is to say, the sentence will not exceed ten years, it could go below ten years, and I'm telling you while I'll keep an open mind, the odds are not high that I am going to go below ten years, but it is possible because I am going to hear from you, I'm going to hear from your lawyer at the time of sentencing, which will not be today. At your lawyer's request, I'm ordering that report which takes about a month, so sentencing will be a month from now.

After telling defense counsel that he would advise Banks of his appeal rights at the time of disposition, and responding to a question from Banks regarding eligibility for parole in the event of incarceration, the judge said: "I do find that the guilty plea is made intelligently, voluntarily, knowingly, and will ask Mr. Murdy [the prosecutor] to kindly proceed." The prosecutor thereupon submitted a statement of facts,

unquestioned by the defense, which plainly provided a sufficient factual basis for the plea. The proceedings concluded when the court said: "Let the record indicate that the matter is now set for disposition on Wednesday, November 3rd, 1982, in this courtroom, at 9:30 a.m., Criminal Court Part 5."

Banks, defense counsel, and prosecutor appeared again before the same judge on November 3. The prosecutor reminded the judge that this was "the disposition of Carl Banks" who had entered a guilty plea to second degree murder on September 28, the disposition having been postponed pending preparation of a presentence report which was now available. The court heard argument from the defense, which urged that a sentence of less than ten years should be imposed. Banks was permitted to allocute as required by Md.Rule 733 d. At the conclusion of his personal plea for mercy, the judge began to question Banks about the latter's prior criminal record. He then ascertained that the victim's mother was in court. He observed that the pre-sentence report revealed that the mother was resentful because "it was too little too late" and because she had not been kept informed of the progress of the case against Banks. He expressed his dissatisfaction with this situation, and with the fact that he had been informed that the victim had had no family.

The judge then discussed some "good things [Banks had] going for him," but noted the prior criminal record revealed by the pre-sentence report. He raised a troubling question:

I was told [at the off-the-record chambers meeting on September 28] that the defendant had been convicted of armed robbery in 1967, but that there were no convictions, no arrests, in 9 years. It was because of that that I accepted this guilty plea with the ten years sentence. I was not told, however, that the defendant also had been found guilty of escape and assault with a deadly weapon in '71 and '73. I'm just wondering, do I have to accept this guilty plea, am I bound by it, or is the failure to

disclose this to the Court, serious criminal convictions sufficient for me not to be bound by this?

There followed an effort by the judge and counsel to recall what had in fact been said at the chambers conference on September 28. It was agreed that the judge had been told of Banks's 1967 conviction for armed robbery. It was agreed that the judge had been told, accurately, that Banks had not been arrested during the nine years immediately preceding the current charges. It appeared that the judge might have been told of a 1966 assault conviction revealed by the pre-sentence report, but that the court had not been told of 1971 and 1973 convictions for escape and assault with a deadly weapon.

The prosecutor said that the State would not have entered the plea agreement had it known of the full extent of Banks's record. The judge concluded that he would not have committed himself to the maximum ten-year sentence had he known of the prior record. He found that under the circumstances he had a duty to repudiate the plea agreement. He gave Banks a choice: to let his guilty plea stand and subject himself to sentencing absent the ten-year maximum contemplated by the agreement; or to withdraw his plea of guilty. Although he insisted that he should be allowed to stand on the plea agreement, Banks eventually reluctantly elected the second option, entering a plea of not guilty and praying a jury trial.

That trial, before a different judge, began on November 9, 1982, over Banks's objections that he was being subjected to double jeopardy. It ended on November 12 when the jury brought in verdicts of guilty of second degree murder and a handgun violation. The sentences we have noted were imposed on November 19.

Banks now urges us to hold either that the plea agreement should be specifically enforced against the State or that his trial should not have occurred because it amounted to placing him twice in jeopardy, jeopardy initially having attached when he entered his guilty plea.

■ As a general rule, once a judge has accepted a guilty plea and bound the defendant to it, the judge cannot refuse to carry through the bargain that induced the plea. *United States v. Blackwell,* 694 F.2d 1325 (D.C.Cir.1982). When the plea agreement includes an understanding as to an agreed sentence, Md.Rule 733 c. 3. makes it very clear that this principle applies:

> If the judge accepts the plea agreement, he shall accept the defendant's plea in open court and embody in his judgment the agreed sentence, disposition or other judicial action encompassed in the agreement, or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

*See* J. Bond, *Plea Bargaining and Guilty Pleas,* (2d ed. 1982) § 6.18(f).

■ It is also true, as a general rule, that jeopardy attaches when a guilty plea is accepted by a court, and this bars the subsequent prosecution on charges based on the same act. *Sweetwine v. State,* 288 Md. 199, 421 A.2d 60, *cert. den.* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980); *Riadon v. United States,* 274 F.2d 304 (6th Cir.1960); *Lombrano v. Superior Court,* 124 Ariz., 525, 606 P.2d 15 (1980); Annot. 75 ALR 2d 683 (1961).

■ Moreover, when a court has accepted a guilty plea and has committed itself to be bound by a sentencing provision embodied in the plea agreement that induced the plea pursuant to Md.Rule 733 c. 3, we think that specific enforcement of the plea agreement is normally the appropriate remedy, if that is the remedy the defendant elects. *See Santobello v. New York,* 404 U.S. 257, 267, 92 S.Ct. 495, 501, 30 L.Ed.2d 427 (1971) (Douglas, J., concurring); *State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976); *Miller v. State,* 272 Md. 249, 322 A.2d 527 (1974).

■ Nevertheless, the rules we have stated are general rules; each is subject to exceptions and variations, depending upon particular circumstances. In deciding whether any or all of them should be applied we consider the guilty plea

and the plea agreement as part of a "whole package of reciprocal arrangements and obligations." *Sweetwine v. State,* 42 Md.App. 1, 4, 398 A.2d 1262 (1979), *aff'd. Sweetwine v. State, supra.*[3] As we pointed out, that package is conditional, the condition being "the continuing good health of the guilty plea." 42 Md.App. at 4, 398 A.2d 1262. Should the guilty plea be voided, the agreement upon which it was based falls. By the same token, if for some reason the agreement is unenforceable, the plea which it induced also falls. *See United States v. Selikoff,* 524 F.2d 650 (2nd Cir.1975), *cert. den.,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976).

The State's first line of defense against the application of the general principles invoked by Banks is to argue that his plea was in fact never accepted by the judge. A tendered but unaccepted plea of guilty does not place the accused in jeopardy. *Stowers v. State,* 266 Ind. 403, 363 N.E.2d 978 (1977). While this argument addresses the double jeopardy aspect of the case, it does not necessarily negate the enforceability of the plea agreement where, as here, Banks is willing to resubmit his guilty plea if he can be assured of the sentencing consideration included in the agreement. *See State v. Brockman, supra.* But in any event, we think that the argument is not supported by the record.

True it is that at the September 28 hearing, the judge never said expressly that he accepted Banks's guilty plea. But he did expressly find the plea to be voluntarily and intelligently made and neither he nor anyone else raised any question about the clearly sufficient factual basis for the plea. Moreover, in accepting the plea agreement and committing himself to be bound by the ten year maximum sentence provision it contained, he was required by Md.Rule 733 c. 3. to accept the plea, at least absent a finding that the

---

**3.** While the Court of Appeals did not accept all of the reasoning in our Sweetwine, it did agree with the quoted description of the nature of plea bargaining. 288 Md. at 203, 421 A.2d 60.

plea was not voluntarily and intelligently made or not supported by a sufficient factual basis—findings he did not make. Additionally, the transcript of the November 3 hearing demonstrates that all the participants in that hearing assumed that the guilty plea had been accepted. Until the judge began to question Banks about the undisclosed prior criminal record, the case had proceeded on the basis that the only issue before the court was an appropriate sentence within the ten-year maximum and the judge himself said had he been told of the undisclosed record "I don't think I would have *accepted* this guilty plea. . . . " [emphasis supplied].

The docket supports the conclusion that the guilty plea had been accepted. The entry for September 28, 1982, reads:

Arraigned and Pleads Guilty to 2nd Degree Murder. Guilty Plea is acceptable to the Court—Levin, J. Judgment: Held Sub Curia—Reset on 11/3/82—9:30 a.m.

The State contends that the "Judgment: Held Sub Curia" entry indicates that the plea had not been accepted, but it is apparent that all that the court held sub curia on September 28 was in fact the judgment—that is, the imposition of sentence. We hold that Banks's guilty plea was accepted.[4]

It is also argued that both the acceptance of the guilty plea and the plea agreement were the product of fraud. A guilty plea procured by the defendant's fraud does not bar subsequent prosecution. *State v. Nardone,* 114 R.I. 363, 334 A.2d 208 (1975); Annot. 75 ALR2d 683, 691. Nor is a plea agreement binding if it is induced by misrepresentation. A. Alschuler, *The Trial Judge: Role in Plea Bargaining, Part 1,* 76 Colum.L.Rev. 1059, 116 (1976); P. Westen and D. Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Cal.L.Rev. 471, 529 (1978). The problem

---

4. The judge, who presided at Banks's trial, in addressing Banks's double jeopardy claim, and relying upon the same record that is before us, concluded that the predecessor judge had not accepted the plea. We think that finding was clearly erroneous. Md.Rule 1086.

with accepting this argument is the lack of any evidence of fraud or knowing misrepresentation on the part of either Banks or his counsel.

During the meeting in the judge's chambers on September 28, at which Banks was not present, there was certainly discussion of Bank's prior criminal record. The full extent of that record was not revealed. But that fact does not demonstrate either fraud or misrepresentation on the part of Banks. Nor does the record in this case suggest that Banks's counsel at that time deliberately withheld from the court or the State information he had about a criminal record more extensive than the 1967 conviction that was revealed.

It appears that defense counsel, the prosecutor, and perhaps the court were all relying on a police rap sheet for their information about the past record. Despite Maryland's elaborate automated criminal history record system, that rap sheet was incomplete. But that shortcoming can scarcely be laid at the door of either Banks or his counsel. In a contract setting, some argument might be made on the basis of either innocent material misrepresentation of fact or unilateral mistake of fact, but the Court of Appeals has stated that the rigid application of contract law principles is not appropriate in plea agreement cases. *State v. Brockman, supra,* 277 Md. at 697, 357 A.2d 376. We have sometimes used contract terminology in such cases (*e.g. Rojas v. State,* 52 Md.App. 440, 450 A.2d 490 (1982); *McCormick v. State,* 38 Md.App. 442, 381 A.2d 694 (1978)) but apparently only "metaphorically". *Sweetwine v. State,* 42 Md.App. at 4, n. 3, 398 A.2d 1262 (1979). In any case, no fraud by Banks seems to have occurred during the in-chambers conference.

When that conference concluded, and the proceedings continued in open court, the judge made no mention of the fact that the agreement or his acceptance of it and of the plea might be conditioned on any particular state of Bank's prior criminal record. Except for the single question as to Bank's present parole or probation status, which Banks answered truthfully, no question on the subject of prior record was asked of Banks or of his counsel. Banks answer-

ed all questions put to him forthrightly, but he simply was not examined in this area. This distinguishes the case at bar from cases like *State v. Nardone, supra. See also United States v. Torrez-Flores,* 624 F.2d 776 (7th Cir.1980); *State v. Darrin,* 325 N.W.2d 110 (Iowa 1982); and *Hamlin v. Barrett,* 335 So.2d 898 (Miss.1976). In each of those cases, in connection with the plea bargaining process, the defendant was specifically asked about a prior record or other pertinent information and lied about or concealed the true facts.

 Yet another possible basis for avoiding the jeopardy effect of the accepted guilty plea would exist if Banks had successfully attacked that plea, *Sweetwine v. State, supra,* or if he had voluntarily withdrawn it, *United States v. Jerry,* 487 F.2d 600 (3rd Cir.1973). The former action did not occur here; as we have noted, Banks throughout the proceedings and on appeal has sought and seeks to sustain his guilty plea. As to the latter, while he did withdraw the guilty plea at the conclusion of the November 3 hearing, that withdrawal can scarcely be considered voluntary. He was told that he had only two choices: to stand on the plea and accept any sentence, within the statutory limit, that the court might choose to impose, or to withdraw the plea and stand trial. He gambled by taking what may then have seemed to be the lesser of two evils, but this was something far less than a voluntary election. *See State v. Brockman, supra,* 277 Md. at 699, 357 A.2d 376 and *Miller v. State, supra,* (where State violates plea agreement with respect to sentencing, accused should be given option of either withdrawing plea or leaving it standing and being sentenced under the agreement).

Is there, then, any other basis which, on the facts of this case, could justify the trial court's action in repudiating his commitment to the plea agreement and insisting that the guilty plea he had accepted be withdrawn, or that Banks submit to sentencing without the ten year maximum limitation? We think not.

 Plea bargaining plays "an indispensable role ... in the administration of criminal justice...." *Sweetwine v. State, supra,* 42 Md.App. at 13, 398 A.2d 1262. *See also, e.g.,*

*Santobello v. New York* and *State v. Brockman,* both *supra.* One of the reasons the process works effectively is the element of certainty it lends to the criminal justice system. From the public perspective, it may well be advantageous for the prosecutor to exchange the uncertainty of conviction following trial for the certainty of conviction produced by a guilty plea, even when a plea agreement includes some provision in mitigation of potential sentence. From the defense viewpoint, it may be equally advantageous to give up the possibility of acquittal following trial for the certainty of a relatively lenient disposition included as part of a plea agreement. We recognized the importance of this "certainty" aspect of plea bargaining, and the adverse effect its loss would have on the process, in our *Sweetwine:* "If the prosecutor cannot rely upon the plea bargain, the potential 'chilling effect' upon the very institution of plea bargaining could be devastating." 42 Md.App. at 12, 398 A.2d 1262. Similar results could ensue if the defendant were unable to rely upon the bargain. Thus, plea bargains have been enforced both against the State, as in *State v. Brockman, supra,* and against the defendant, as in *Blinken v. State,* 291 Md. 297, 435 A.2d 86 (1981).

Some jurisdictions, to be sure, have held that a judge who accepts a guilty plea and who agrees to a sentencing provision in a plea agreement may subsequently change his mind and repudiate the agreement if he allows the defendant to withdraw the plea. *See e.g. State v. Wenzel,* 306 N.W.2d 769 (Iowa, 1981) and *Barker v. State,* 259 So.2d 200 (Fla.App. 1972). But this approach undermines the plea bargaining process since it cannot assure either side of the benefits for which it bargained. It also seems inconsistent with the standard of fair play and equity espoused by the Court of Appeals in *Brockman,* 277 Md. at 697, 357 A.2d 376 and with the notion of preservation of reasonable expectations we explained in *Rojas v. State, supra.*

What is even more important, however, is that that approach flies in the face of the policy of certainty unequivocally embodied in Md.Rule 733 c. 3.: "If the judge accepts the plea agreement, he *shall accept the defendant's plea* in

open court *and embody in his judgment the agreed sentence,* disposition or other judicial action encompassed in the agreement, or, with the consent of the parties, a disposition more favorable to the defendant than that provided in the agreement" [emphasis supplied]. Where, as here, the judge commits himself to the agreement and accepts the plea, he is ordinarily bound. The central importance of certainty to the plea bargaining process demands no less.

In the instant case, the plea agreement was twice stated on the record: once by the prosecutor and once by the judge. Neither of those statements contained any hint that any particular state of Bank's prior criminal record was a term or condition of the agreement. A provision that is deemed material to a plea agreement should be stated on the record. *See* Md.Rule 733 d. Such a procedure enables all parties to understand precisely what the agreement is, and it prevents the uncertainty produced by changes of mind based on unstated premises or subjective considerations unknown to some of the parties and unreviewable by the appellate courts.

We are aware, of course, that plea bargaining involves more than the defendant's concerns. In every case, the court, in acting on a plea agreement, must determine not only that the plea supporting the agreement is knowingly and voluntarily made, and supported by an adequate factual basis, but also "whether the agreement is one which punishes the defendant for his act as well as satisfies the public interest that justice be not thwarted." *Blinken v. State, supra,* 291 Md. at 308, 435 A.2d 86. But there are numerous ways in which a judge can protect this public interest if, at the time a guilty plea is tendered and a plea agreement submitted, he feels a need for further information or further reflection.

First, he may set forth on the record all material terms of the agreement, as we have just suggested, including underlying considerations that are important to him. Second, he may accept the plea and agreement conditionally, the condition being subsequent substantiation as by a pre-sentence report, of facts stated or represented as true when the plea

54

and agreement were tendered. *Blinken v. State, supra.* Third, he may make the acceptance of the plea and his commitment to the agreement generally conditioned upon the pre-sentence report. *See State v. Darrin, supra.* Fourth, he may "reject the agreement or may defer his decision as to acceptance or rejection until after the pre-sentence proceedings and investigations he deems necessary." Md.Rule 733 c. 1. *Lombrano v. Superior Court, supra,* 606 P.2d at 16.

█ None of these steps was taken here. On the facts presented by this record, we hold that Banks was placed in jeopardy when his guilty plea was accepted. That jeopardy was not removed when he was compelled to withdraw the guilty plea against his wishes. Consequently, his subsequent trial violated his right not to be put twice in jeopardy. The judgment entered as a result of the trial must be reversed. Bank's guilty plea must be reinstated. He is entitled to be resentenced subject to the plea agreement to which the judge committed himself: that is to imprisonment for not more than ten years for murder in the second degree.

JUDGMENT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND COUNCIL OF BALTIMORE CITY.