549 A.2d 417

John **POOLE**

v.

**STATE of Maryland.**

**No. 87, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Nov. 3, 1988.

106

---

Charles G. Bernstein (Melissa D. Gray and Bernstein, Sakellaris & Ward, on the brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., Baltimore, M. Kenneth Long, Jr., State's Atty. for Washington County and Andrew G.W. Norman, Asst. State's Atty. for Washington County, Hagerstown, on the brief, for appellee.

Argued before WILNER, ROBERT M. BELL and POLLITT, JJ.

ROBERT M. BELL, Judge.

John Poole, appellant, was charged in a 28 count indictment with various narcotics offenses. Pursuant to a written plea agreement reached with the State and presented to the trial judge for approval, he pled guilty to two counts of distribution of cocaine and two counts of maintaining a common nuisance.[1] When he appeared for the sentencing and learned that the trial judge would not impose the sentence recommended pursuant to the plea agreement, appellant accepted the opportunity given him by the court to withdraw his plea and proceed to trial before a jury in the Circuit Court for Washington County. Following that trial, at which only the four counts agreed to in the plea agreement were called by the State, appellant was convicted. The trial judge later sentenced him to a total term of

---

1. Under the terms of the plea agreement, in return for appellant's pleas of guilty to the four counts of the indictment, the State agreed to nol pros the remaining counts of the indictment, and recommend a ten year sentence. Appellant, for his part, agreed to forfeit money and property to the State, and provide information and testimony concerning criminal activity of which he was aware, including information about corrupt law enforcement officials. The parties also agreed that pending sentencing, appellant would remain free on bail.

imprisonment of 40 years. He has appealed from that judgment presenting as the sole question:

Whether the Court erred in refusing to honor a plea agreement it had previously accepted.

Implicit in the issue raised by appellant is the conclusion that the trial judge had presented to him, and indeed bound himself to accept, the plea agreement entered into by appellant and the State. With the exception of the correctness of that conclusion, the facts out of which this appeal arises are largely not in dispute.

After appellant and the State had entered into the written plea agreement, appellant's counsel and the assistant State's Attorney met in an off-the-record conference with the trial judge in the judge's chambers. Following the conference, appellant entered pleas of guilty to four counts of the indictment. During the course of the inquiry conducted to determine the voluntariness of appellant's pleas, the court informed appellant that "... if you are convicted of these four offenses, you can receive up to 80 years imprisonment and a fine of up to $100,000.00. Do you understand that?", to which appellant responded, "Yes, sir". Later, the court received a negative answer when it asked appellant, "Now, has anybody threatened you or pressured you or coerced you, anybody done anything of that nature, to cause you to plead guilty against the advice of your attorney or against your own better judgment?"

The following colloquy concerning the plea agreement, then occurred:

THE COURT: Mr. Poole, I am advised by the attorneys in this case that the plea agreement that has been entered into between the Defendant and the State has been reduced to writing. I understand that that plea agreement which I just examined and read is there in your attorney's hand and it appears to be your signature on that agreement. Would you please examine that and tell me if that is your signature?

DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Look at that plea agreement and tell me whether or not you have been over that with your attorney.

DEFENDANT: Yes, Sir, I have.

THE COURT: Is there anything in there that you don't understand?

DEFENDANT: No, Your Honor.

THE COURT: Mr. Hassett [Defense counsel], are you satisfied that your client does understand the provisions of that plea agreement?

MR. HASSETT: I am, Sir.

THE COURT: And you've been over those provisions with him, item by item?

MR. HASSETT: Your Honor, I would state for the record I think I have thoroughly reviewed this document with my client and I believe that he understands every provision in this plea agreement.

THE COURT: Mr. Poole, what I want to ask you is, is there anything else, and I want it stated on the record if there is, or not, whatever the situation is, I want it stated on the record, is there anything else that has happened, whether anybody, a policeman, a prosecutor, an attorney, a non-attorney, a judge, anyone, has made any promise to you or any inducement or any enticement whatsoever, other than what is contained in that written plea agreement in order to encourage you or get you to enter these pleas of guilty to these four charges?

DEFENDANT: No, Your Honor, that's it.

The voluntariness inquiry having been completed and the factual basis for the pleas placed on the record, the court accepted the pleas and entered guilty verdicts as to each of the four counts.

The court now turned its attention to the sentencing. The plea agreement contemplated that a presentence investigation report would be ordered and that appellant be continued on bail pending sentencing. This prompted the following colloquy at the bench:

THE COURT: *I'll go along with most of these provisions but there's no way I'm going to release him.*

MR. NORMAN [Assistant State's Attorney]: Oh, Judge!

THE COURT: What's he supposed to be released for?

MR. NORMAN: Because he's cooperating with us in the meantime.

MR. HASSETT: Judge, that's a real important part of this. I can assure you his bail is very high.

MR. NORMAN: A $100,000 bail, Your Honor.

MR. HASSETT: He's not a threat. I can assure that to the Judge. I think as a protective (inaudible) he's supposed to call everyday.

MR. NORMAN: He has to call us.

THE COURT: Alright.

THE COURT: Bond is $100,000 and I will continue you on bond until a presentence investigation is complete, and I can tell you one thing, Mr. Poole, that if you get a parking ticket between now and the time that you come before this Court, and I mean anything that indicates to me that you continue to be a merchant in illegal drug trafficking in this community or any other, I'm going to remand you to the custody of the Sheriff without bond and you're going to face the prospect of eighty years in prison.

I find what has happened in this case and what is going on in this community and what people like yourself who trade in this stuff, which is a scourge on our community, which is causing death and injury to countless individuals, I see your customers in my Juvenile Court, mothers who are strung out on cocaine, pregnant mothers, and I see your customers who have their children taken away from them mercifully because they are unfit to be human beings, much less parents, because of what is happening to them from the invasion of their bodies, minds and souls from drugs. The way you've made your living is a scourge on this community and it better stop, it better stop right now, or you're facing eighty years in prison. (Emphasis added)

The court caused the plea agreement to be sealed. Significantly, in discussing what it was to do with the "plea", the court stated "I just don't want the press over there to think I'm going soft on him."

Prior to sentencing but, presumably, after receipt of the presentence investigation report, the court determined not to be bound by the plea agreement. At a hearing on April 16, 1987, it placed that determination on the record and announced that it was going to "give the Defendant the opportunity, if he wishes to under these circumstances, to withdraw the pleas which he entered." In response, appellant's counsel placed his recollection of the events leading to his client's guilty pleas on the record:

My recollection of the events is quite simply Mr. Norman and I appeared in your Chambers and submitted a written plea agreement to you at that time. We had some discussion. I remember your initial reaction was you didn't feel the contemplated amount of incarceration was enough. It is my recollection that you countered with a figure of fifteen years. I do remember that you read the plea agreement. As a matter of fact, the initial written plea agreement was submitted to you and I do recollect that you made a correction in the document regarding our wording about a particular provision.

I also recall that not only did the discussion include the three of us, but it did also include Mr. Long, who is the State's Attorney, by way of a telephone call.

I remember you expressing concern about the case. Mr. Norman and I left your chambers, got together along with a person whose name I do not know in the bar library and worked up a guideline sheet. I remember we presented that information to you while you were on the bench, I think in the midst of a jury trial for someone from detention center out there who was charged with assault with intent to maim. I recollect that was a pretty quick jury verdict in that case, and I remember we presented the information to you *and you said, I will accept the ten years.*

*Once that was conveyed to me, I conveyed that to my client. I believe, and I think the law supports, you, in effect, bound yourself to the terms of this plea agreement.* (Emphasis added)

The assistant State's Attorney acknowledged that his recollection was the same as that of appellant's counsel.

The trial court's recollection, which differed significantly from that of appellant's counsel and the assistant State's Attorney, was also placed on the record:

Alright. I told you in Chambers when this plea agreement was presented to me, and I looked at it, that I thought it was inappropriate. I called the State's Attorney in your presence and talked to him about it, and I did, as you indicate, mention an alternative suggestion.

Mr. Hassett, in outlining the facts, or your proffer of the facts and your recollection of them, you have overlooked the fact that you wanted it understood by the Court that if I disapproved or rejected the plea agreement, that your client would have the opportunity to withdraw the pleas of guilty that he would enter, and I gave you that assurance, that if the Court rejected the plea agreement that he would be afforded the opportunity to withdraw the pleas of guilty which it was anticipated he was going to enter.

Secondly, I think you have overlooked the fact, and apparently Mr. Norman had as well, that there was to be presentence investigation and the Court did not indicate, as you have said, that, under all circumstances, that the plea bargain that the Defendant and the State entered into would be approved.

Now as I told you at the outset of this hearing, I have reviewed the presentence investigation and I have reviewed this National Center on Institutions and alternatives Report which you submitted to me earlier this afternoon.

I have decided, as I told you over the telephone, and as I told Mr. Norman over the telephone, that I reject the plea agreement that has been entered into between the State

and the Defendant, and therefore afford you the opportunity to consult with your client and determine whether you intend to withdraw the four pleas of guilty which were entered on March the fifth.

\* \* \* \* \* \*

Mr. Hassett, I'll repeat one more time, at the time this plea bargain was presented to me, I had serious reservations and questions about it and you made the point and I heard you loud and clear that if the Court decided to reject the plea agreement that, you know, it would be clearly understood that your client be given the opportunity to withdraw the guilty pleas that he was entering, and I likewise recall the fact that it was subject to review of the presentence investigation. I have made up my mind. I reject the plea negotiation or agreement that you and the State have entered into and I am now affording you, your client, the opportunity to withdraw the pleas or to stand by the pleas that he entered on March the fifth.

Appellant's counsel specifically disputed the court's recollection that "We entered into this plea with the possibility of allowing us to withdraw." Indeed, he reiterated that, as far as he was concerned, "[B]oth counsel and my client entered into this with the understanding that this was a firm agreement on the part of the Court, and, quite frankly, he [my client] would never have done the things that he was asked to do in the plea agreement had there been any divergence of view about that." [2]

Maryland Rule 4–243, pertaining to plea agreements, provides:

(a) *Conditions for Agreement.*—The defendant may enter into an agreement with the State's Attorney for a plea

---

2. By way of performing his obligations under the plea agreement, appellant forfeited $10,000 and his pick-up truck to the State and gave full statements to the police and the Narcotics Task Force concerning his involvement in criminal activity. He had also been summonsed to testify for the State in two Circuit Court cases and in an administrative hearing involving a Hagerstown City police officer.

of guilty or nolo contendre on any proper condition, including one or more of the following:

(1) That the State's Attorney will amend the charging document to charge a specified offense or add a specified offense, or will file a new charging document;

(2) That the State's Attorney will enter a nolle prosequi pursuant to Rule 4–247(a) or move to mark certain charges against the defendant stet on the docket pursuant to Rule 4–248(a);

(3) That the State's Attorney will agree to the entry of a judgment of acquittal on certain charges pending against the defendant;

(4) That the State will not charge the defendant with the commission of certain other offenses;

(5) That the State's Attorney will recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action;

(6) *That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.* (Emphasis added)

(b) *Recommendations of State's Attorney on Sentencing.*—The recommendation of the State's Attorney with respect to a particular sentence, disposition, or other judicial action made pursuant to subsection (a)(5) of this Rule is not binding on the court. The court shall advise the defendant at or before the time the State's Attorney makes a recommendation that the court is not bound by the recommendation, that it may impose the maximum penalties provided by law for the offense to which the defendant pleads guilty, and that imposition of a penalty more severe than the one recommended by the State's Attorney will not be grounds for withdrawal of the plea.

(c) *Agreements of Sentence, Disposition, or Other Judicial Action.*—(1) Presentation of the Court.—If a plea agreement has been reached pursuant to subsection (a)(6) of this Rule for a plea of guilty or nolle contendre which

contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. *The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.* (Emphasis added)

(2) Not Binding on the Court.—The agreement of the State's Attorney relating to a particular sentence, disposition or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) Approval of Plea Agreement.—If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

(4) Rejection of Plea Agreement.—If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty or nolle contendre, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4–242(c) and a plea of nolle contendre only pursuant to Rule 4–242(d).

(5) Withdrawal of Plea.—If the defendant withdraws the plea and pleads not guilty, then upon the objection of defendant or the State made at that time, the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

(d) *Record of Proceedings.*—All proceedings pursuant to this Rule, including the defendant's pleading, advice by

the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record.  If the parties stipulate to the court that disclosure of the plea agreement or any of its terms would cause a substantial risk to any person of physical harm, intimidation, bribery, economic reprisal, or unnecessary annoyance or embarrassment, the court may order that the record be sealed subject to terms it deems appropriate.

The Rule contemplates that a plea agreement may be conditioned upon a recommendation by the State's Attorney with respect to a particular sentence, disposition, or other judicial action, which is not binding upon the court, or upon the imposition of a particular sentence, disposition, or other judicial action by a judge, which, if approved, is binding on the court.  If the former, the defendant is not entitled to withdraw his plea, the court need only advise the defendant that it is not bound by the recommendation and, therefore, could impose the maximum penalty provided by law.  If the latter, upon approval of the agreement, the court must embody in the judgment the agreed sentence, or, with the consent of the parties, one more favorable to the defendant. The defendant is entitled to withdraw his plea in the event that the court refuses to accept the plea agreement.  The proceedings pursuant to the Rule must be on the record.

■    The written plea agreement in this case does not, by its terms, contemplate that a specific sentence be imposed by the court; it expressly speaks in terms of a recommendation by the State, and thus, on its face, would seem to fall within § (a)(5) of the Rule.  It is evident from the circumstances, however, that the parties were, in fact, proceeding under § (a)(6).  They clearly and deliberately submitted the agreement to the judge for his approval.  Pursuant to that submission, the court reviewed the agreement, participated in extensive discussions with the Assistant State's Attorney prosecuting the case and defense counsel concerning its terms, even initiating a conversation with the State's Attorney himself, and insisted on some modifications of the agreement, which the parties accepted.  From this, it is

apparent that, whether the judge did or did not articulate his approval or acceptance of the proposed sentence, *he and the parties* were then proceeding under § (c) of the Rule.

Section (c) allows the judge three options: to accept the proposed sentence; to reject it; or to defer the decision whether to accept or reject it. Not even the trial judge suggests that, at the conclusion of the off-the-record discussion or at any time prior to receiving the pre-sentence investigation report, he actually *rejected* the proposed sentence. The only dispute is whether he accepted or approved it, as both attorneys indicated he did, or, as he maintained, whether he deferred the decision. If he approved the sentence, § (c)(3) required that the agreed sentence be embodied in the judgment. *See Banks v. State*, 56 Md.App. 38, 466 A.2d 69 (1983). There, relying upon the predecessor to Rule 4–243, Maryland Rule 733c.3., we held that "[a]s a general rule, once a judge has accepted a guilty plea and bound the defendant to it, the judge cannot refuse to carry through the bargain that induced the plea." [3] *Id.*, 56 Md. App. at 47, 466 A.2d 69. We observed that in determining whether that general rule should be applied, the guilty plea

---

**3.** It matters not that appellant, having been offered the option of withdrawing his plea or being sentenced pursuant to the plea without regard to the plea agreement, chose to withdraw the plea and proceed to trial. *Banks* addressed that precise situation. Although we acknowledged "that specific enforcement of the plea agreement is normally the appropriate remedy, if that is the remedy the defendant elects", 56 Md.App. at 47, 466 A.2d 69, we went on to observe, and indeed hold:

> ... While he did withdraw the guilty plea at the conclusion of the November 3 hearing, that withdrawal can scarcely be considered voluntary. He was told that he had only two choices: to stand on the plea and accept any sentence, within the statutory limit, that the court might choose to impose, or withdraw the plea and stand trial. He gambled by taking what may then have seemed to be the lesser of two evils, but this was something far less than a voluntary election. *See State v. Brockman*, [277 Md. 687, 357 A.2d 376 (1976)] and *Miller v. State*, [272 Md. 249, 322 A.2d 527 (1974)], (where State violates plea agreement with respect to sentencing, accused should be given option of either withdrawing plea or leaving it standing and being sentenced under the agreement). 56 Md.App. at 51, 466 A.2d 69.

and the plea agreement must be viewed as a part of a "whole package of reciprocal arrangements and obligations". 56 Md.App. at 47–48, 466 A.2d 69, quoting *Sweetwine v. State*, 42 Md.App. 1, 4, 398 A.2d 1262 (1979), *aff'd*, 288 Md. 199, 421 A.2d 60, *cert. denied*, 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980).

The conflict between what the judge said he did and what both counsel claim he did, presents us with a real dilemma. There being absolutely no suggestion here of any dishonesty or sharp practice on anyone's part, it is evident that the dispute arises from different perceptions of what occurred—more particularly, what was said during the off-the-record chambers conference. Had the discussions been recorded, we would know for certain whether the trial judge did or did not effectively approve the proposed sentence. Our uncertainty as to that, *i.e.*, the uncertainty in the record, is the product of the critical discussions being conducted off the record. The colloquy that is on the record is, unfortunately, somewhat ambiguous. Some of it can be read as supporting the trial judge's belief that he simply deferred a decision;[4] other parts tend to support the position urged by counsel.[5]

---

**4.** In addition to the express language of the plea agreement and the absence of an express statement by the judge binding himself to accept the agreement, the trial judge specifically advised appellant, without referring to the sentence contemplated by the plea agreement, that the maximum sentence he could receive on each of the counts to which he entered guilty pleas was that provided by law. In addition, the trial judge's recollection stressed appellant's insistence on reserving the right to withdraw his pleas in the event that the court did not accept the agreement and the fact that a presentence investigation report was ordered.

Neither of the latter two reasons necessarily supports the court's position. One is disputed by appellant and the other is at best neutral, since a presentence investigation report will enable the court to determine whether to impose a sentence more favorable than that contemplated by the plea agreement.

**5.** Aside from counsel's recollection, appellant finds dispositive the facts that: (1) appellant's pleas were tendered only after the plea agreement had been presented to and reviewed by the court; (2) the court accepted his pleas; (3) the court did not state on the record that

As we see it, we have four options. We could (1) accept the trial judge's recollection, notwithstanding the contrary view of counsel, hold that the proposed sentence was never approved, and thus affirm the judgment; (2) accept counsel's recollection, hold that the proposed sentence *was* approved, and amend the judgment to conform with the agreement; (3) disregard the dispute, affirm the judgment, and allow appellant to bring a new proceeding under Rule 4–345(a) [6] to correct an "illegal" sentence, so that a trial court can make factual findings as to what occurred and proceed accordingly; or (4) hold that, whatever was said or done, the procedure violated the Rule and determine the consequences of that violation.

The first two options would cast us in the role of factfinder, a role we are not competent to play; therefore, they are particularly inappropriate. The third has a superficial appeal—let some other trial judge decide whose recollections to accept; however, it is not apposite to the situation before us. That is generally the approach we take where there is an insufficient basis in the record for us to decide the issue. See, for example, *Harris v. State,* 299 Md. 511, 517, 474 A.2d 890 (1984); *Cherry v. State,* 305 Md. 631, 644, 506 A.2d 228 (1986).

We believe the fourth option to be the better one. There is more at stake here than simply what the trial judge did or did not say. At issue here is the procedure for implementing § (c) of the Rule. If discussions under Rule 4–243(c), or, at least, the end results of them, are allowed to remain off the record, the kind of dispute we have here can recur. Parties can leave the judge's chambers with very different perceptions of what occurred and may, as appellant did

---

it was deferring the decision whether to approve the plea agreement; (4) the court stated on the record that it would go along with most of the conditions of the agreement, but would not release appellant; and (5) appellant performed pursuant to the agreement.

**6.** Maryland Rule 4–345(a) permits the court to "correct an illegal sentence at any time."

here, act to their prejudice based on a perception that, later, it turns out, was not shared by one or more of the other participants.

Though desirable in many, if not most, instances, we do not regard it as necessary that the entire discussions conducted pursuant to § (c) be recorded. Such discussions may be quite lengthy and may involve several discussions over a period of time. But if the discussions are not recorded, at a very minimum, the court should announce, for the record, at the conclusion of the discussion, what, if anything, it has agreed to do. This ensures that before the parties depart and possibly act to their detriment, they *and* the judge have a clear, unimpeachable statement on the record of how the case is to proceed. Anything less places the balance of § (c)—and indeed the integrity of the plea bargaining process—in significant jeopardy.[7]

When that procedure is not complied with and there is any significant dispute as to whether the proposed agreement was approved, we think that justice requires that the defendant be given the benefit of the doubt and that, if he or she insists on proceeding with a disposition that both sides have clearly agreed to, the court must embody that disposition in its judgment. The court can easily protect itself against any and all problems in this regard by simply making its decision, if not the discussions themselves, a matter of record.

In the case *sub judice*, notwithstanding the clear mandate of the rule that he do so, the trial judge did not advise

---

7. To inject certainty into the criminal justice system and to ensure fairness and equity are two of the policies underlying Rule 4–243. *See Banks*, 56 Md.App. at 52–53, 466 A.2d 69. These same policies underlie the plea bargaining process, the indispensability to the administration of the criminal justice system of which is implicitly recognized by the Rule. *Id.*, 56 Md.App. at 51–52, 466 A.2d 69. Moreover, subsection (d) of the Rule, by requiring that the material terms of the agreement, and the proceedings related thereto, be placed on the record, evidences a purpose of ensuring meaningful appellate review of the proceedings and, in particular, of the enforceability of a plea agreement.

appellant, on the record, that he intended to defer decision as to whether to accept or reject the agreement until he had received the presentence investigation report, nor did he tell appellant that he considered the agreement to be that the State would merely recommend a particular sentence, the plea agreement not being binding on him until he adopted it. Instead, he permitted the critical communication bearing on his intention to bind himself to accept the plea agreement to be conducted off the record; hence, rendering review difficult at best. Because, in so doing, the trial judge did not disabuse appellant of the perception that he had accepted the plea agreement, but, on the contrary, reinforced it, appellant is entitled to the benefit of his bargain. Accordingly, we will reverse appellant's convictions, reinstate his guilty pleas, and remand the matter to the circuit court for sentencing in accordance with the plea agreement.

JUDGMENTS REVERSED; PLEAS OF GUILTY REINSTATED; CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR SENTENCING IN ACCORDANCE WITH THE PLEA AGREEMENT.

COSTS TO BE PAID BY WASHINGTON COUNTY.