2019 IL App (2d) 170030
No. 2-17-0030
Opinion filed July 18, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-281 |
| ROGER C. O'BRIEN, | ) ) | Honorable William P. Brady, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justice Jorgensen concurred in the judgment and opinion.
Justice Hutchinson dissented, with opinion.

**OPINION**

¶ 1    Defendant, Roger C. O'Brien, appeals from his convictions of aggravated battery (720 ILCS 5/12-3.05(a)(4) (West 2014)) and aggravated domestic battery (*id.* § 12-3.3(a)). He argues on appeal that (1) the prosecution was barred by the prohibition against double jeopardy, (2) the prosecution deprived him of the benefit of a plea agreement with the State, and (3) one of his convictions must be vacated pursuant to the one-act, one-crime rule. We affirm in part and remand to the trial court with directions to vacate defendant's lesser conviction.

¶ 2                                   I. BACKGROUND

¶ 3    A De Kalb County grand jury returned a four-count indictment against defendant. Count I charged defendant with aggravated battery, specifying section 12-3.05(d)(1) of the Criminal Code of 2012 (Code) (*id.* § 12-3.05(d)(1)) as the statutory basis for the charge. Count II charged defendant with aggravated domestic battery (*id.* § 12-3.3(a)), a probationable Class 2 felony (*id.* § 12-3.3(b)). Counts III and IV charged defendant with domestic battery (*id.* § 12-3.2(a)(1)). All four counts arose from an altercation between defendant and his 80-year-old stepfather, Robert Clarner.

¶ 4    Defendant and the State entered into an agreement pursuant to which defendant would plead guilty to count I of the indictment and the remaining counts would be dismissed. Count I of the indictment stated, in pertinent part, as follows:

> "ROGER C. O'BRIEN committed the offense of AGGRAVATED BATTERY (Class 2 FELONY), in that said defendant KNOWINGLY CAUSED GREAT BODILY HARM TO ROBERT CLARNER IN THAT SAID DEFENDANT STRUCK ROBERT CLARNER MULTIPLE TIMES IN THE FACE WITH HIS FISTS CAUSING LACERATIONS AND NOSE FRACTURES, AT A TIME WHEN SAID DEFENDANT KNEW ROBERT CLARNER TO BE A PERSON 60 YEARS OF AGE OR OLDER, in violation of Chapter 720, Section 5/12-3.05(d)(1)."

Significantly, section 12-3.05(d)(1) of the Code requires proof that the defendant committed a battery with knowledge that the victim was 60 years of age or older; it does not require proof of great bodily harm. *Id.* § 12-3.05(d)(1). Although the indictment stated that the offense was a Class 2 felony, a violation of section 12-3.05(d)(1) is actually a Class 3 felony. *Id.* § 12-3.05(h). On the other hand, the factual allegations of count I set forth the elements of aggravated battery as defined in section 12-3.05(a)(4) of the Code (*id.* § 12-3.05(a)(4) (a person commits aggravated

battery when, in committing a battery, he or she knowingly "[c]auses great bodily harm *** to an individual 60 years of age or older")), which *is* a Class 2 felony (*id.* § 12-3.05(h)). Furthermore, probation is not an authorized sentence for a violation of section 12-3.05(a)(4). 730 ILCS 5/5-5-3(c)(2)(I) (West 2014).

¶ 5    Defendant entered his guilty plea on January 29, 2016. Before he did so, the trial court admonished him that the sentencing range "begins at placing you on some form of probation and it can go all the way up to the most serious charge, which is commitment to the Illinois Department of Corrections for a period of time not less than three, no more than seven years." After defendant entered his guilty plea, the trial court dismissed counts II, III, and IV of the indictment.

¶ 6    On March 28, 2016, the State moved to amend count I of the indictment by changing the statutory citation therein from section 12-3.05(d)(1) of the Code to section 12-3.05(a)(4). For the reasons discussed above, the amendment would make defendant ineligible for a sentence of probation. The trial court granted the motion over defendant's objection. However, the trial court concluded that, because defendant had been admonished that probation was an authorized sentence, he was entitled to withdraw his plea and proceed to trial. Defendant chose to do so, and counts II, III, and IV were reinstated. The matter proceeded to a bench trial, at which the trial court found defendant guilty on all four counts of the indictment. The trial court entered a judgment of conviction on only counts I and II and sentenced defendant to concurrent five-year prison terms. The trial court denied defendant's motions for judgment notwithstanding the verdict and to reconsider his sentences. This appeal followed.

¶ 7                                    II. ANALYSIS

¶ 8    The fifth amendment to the United States Constitution and article I, section 10, of the Illinois Constitution provide that no person shall be twice placed in jeopardy for the same offense.   U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10.   This prohibition protects the accused against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  *People v. Cervantes*, 2013 IL App (2d) 110191, ¶ 24.   When determining whether a prosecution violated the prohibition against double jeopardy, the first step in the analysis is to determine when jeopardy attached in the first proceeding.  *People v. Cabrera*, 402 Ill. App. 3d 440, 447 (2010).   When a defendant pleads guilty, jeopardy attaches when the trial court accepts the plea.  *Id.*   Once jeopardy has attached, the double jeopardy clause forbids further prosecution *if* the initial prosecution terminated improperly.  *Id.* at 449-50.

¶ 9    As a general rule, a defendant's withdrawal of his or her guilty plea does not improperly terminate the prosecution in which the plea was entered.  As a federal court has explained:

"Because ' "the Double Jeopardy Clause … does not relieve a defendant from the consequences of his voluntary choice," ' [citation], it is well-settled that double jeopardy does not apply to the original counts in an indictment when a defendant has withdrawn or successfully challenged his plea of guilty to lesser charges.  [Citations.]  The numerous cases that consider this issue 'hold with apparent unanimity that when [the] defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy … obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain.' [Citation.]  We agree.  Anything else would give rise to intolerable manipulation and gamesmanship on the part of defendants.  *Cf. United States ex rel. Williams v. McMann*,

436 F.2d 103, 106-07 (2d Cir. 1970) ('For us to hold that one in [defendant's] position may not be tried and sentenced upon the charge originally brought would encourage gamesmanship of a most offensive nature. Defendants would be rewarded for prevailing upon the prosecutor to accept a reduced charge and to recommend a lighter punishment in return for a guilty plea, when the defendant intended at the time he entered that plea to attack it at some future date.')." *United States v. Podde*, 105 F.3d 813, 816-17 (2d Cir. 1997).

¶ 10 A significant qualifier in the above analysis is that the defendant must withdraw or challenge his plea voluntarily. A decision from a sister state, *Banks v. State*, 466 A.2d 69 (Md. Ct. Spec. App. 1983), illustrates this point. In *Banks*, the defendant's plea agreement provided that the State would recommend a 10-year prison sentence and the defendant would be permitted to argue that a shorter sentence was appropriate. The trial court accepted the plea and initially committed itself to imposing a sentence no longer than 10 years. However, after reviewing a presentence report, the trial court indicated that it would not have accepted the State's recommendation had it known the severity of the defendant's criminal history. The trial court offered the defendant the option of (1) letting his plea stand and receiving a sentence that was not subject to the 10-year upper limit to which the trial court originally agreed or (2) withdrawing his plea and proceeding to trial. The defendant reluctantly withdrew his plea and was found guilty at the ensuing trial.

¶ 11 The *Banks* court acknowledged decisions from other jurisdictions permitting a trial court to repudiate its previous acceptance of a guilty plea. *Id.* at 76 (citing *State v. Wenzel*, 306 N.W.2d 769 (Iowa 1981), and *Barker v. State*, 259 So. 2d 200 (Fla. Dist. Ct. App. 1972)). However, the *Banks* court declined to follow those decisions. The *Banks* court concluded that

there was no proper basis for the trial court's decision to repudiate the plea agreement. Because of the improper pressure that the trial court's decision placed on the defendant, his decision to withdraw his plea was not voluntary. *Id.* at 76-77. The *Banks* court stated:

"[W]e hold that [the defendant] was placed in jeopardy when his guilty plea was accepted. That jeopardy was not removed when he was compelled to withdraw the guilty plea against his wishes. Consequently, his subsequent trial violated his right not to be put twice in jeopardy. The judgment entered as a result of the trial must be reversed. [The defendant's] guilty plea must be reinstated. He is entitled to be resentenced subject to the plea agreement to which the judge committed himself: that is to imprisonment for not more than ten years ***." *Id.* at 77.

In *Banks*, the defendant was compelled to withdraw his plea by an improper act on the trial court's part. Here, it appears that defendant withdrew his plea only because the trial court permitted the State to amend the indictment. Applying the *Banks* court's reasoning, this would render the withdrawal of defendant's plea involuntary *if* permitting the indictment to be amended was improper (as was the repudiation of the defendant's plea agreement in *Banks*). Otherwise, there was no coercion of the sort that would warrant departing from the rule that a prosecution does not terminate improperly when a defendant withdraws his or her plea. Accordingly, we consider whether the trial court acted improperly when it permitted the State to amend the indictment.

¶ 12   The factual allegations of the original indictment set forth the elements of the Class 2 felony offense of aggravated battery as defined in section 12-3.05(a)(4) of the Code (720 ILCS 5/12-3.05(a)(4) (West 2014)). However, the indictment specified that the charged offense was a

violation of section 12-3.05(d)(1) of the Code (*id.* § 12-3.05(d)(1)). The trial court permitted the State to amend the indictment so that the statutory citation conformed to the allegations.

¶ 13    In *People v. Shipp*, 2011 IL App (2d) 100197, ¶ 21, cited by the State, we held that an amendment correcting the statutory citation for the charged offense was not error. We observed that amending a charging instrument is permissible "if the change is not material or does not alter the nature and elements of the charged offense." *Id.* According to *Shipp*, "[f]ormal amendment is warranted especially where there is no resulting surprise or prejudice to the defendant or where the record clearly shows that the defendant was otherwise aware of the actual charge." *Id.* Significantly, " '[A]n error in the citation of the statute giving rise to a charge is a mere technical defect which is subject to amendment [citations], particularly where the sections involved are not separate and distinct offenses but are simply different ways in which the same offense may be committed.' [Citation.]" *Id.* ¶ 22. Also, " '[a]mendments of statutory provisions have been allowed where the offense which the grand jury intended to bring was clear and the figures printed on the indictment were only misprints.' [Citations.]" *Id.* A formal amendment may be made between the entry of a guilty plea and sentencing. *People v. Gancarz*, 369 Ill. App. 3d 154, 176 (2006), *rev'd in part on other grounds*, 228 Ill. 2d 312 (2008).

¶ 14    Defendant argues that the amendment here was prejudicial because he believed that he was pleading guilty to an offense for which probation was an authorized sentence. The argument is unpersuasive because permitting defendant to withdraw his plea ameliorated any prejudice resulting from the incorrect statutory citation.

¶ 15    Defendant further argues that *Shipp* is inapplicable to cases where it is uncertain what offense the grand jury intended to charge. The *Shipp* court acknowledged, but distinguished, two cases—*People v. Patterson*, 267 Ill. App. 3d 933 (1994), and *People v. Betts*, 78 Ill. App. 3d 200

(1979)—in which uncertainty arose when the State attempted to amend the factual allegations of the indictment. *Shipp*, 2011 IL App (2d) 100197, ¶ 27. Here, the amendment left the indictment's factual allegations intact. Consequently, *Patterson* and *Betts* are inapplicable here (as they were in *Shipp*).

¶ 16    Finally, defendant argues that "[t]he *** most important[ ] distinction between *Shipp* and the case at bar is that *Shipp* does not involve the constitutional problem of the attachment and improper termination of jeopardy." The argument is circular: a double jeopardy violation occurs when an indictment is improperly amended, and an indictment is improperly amended when a double jeopardy violation occurs. We find it unpersuasive.

¶ 17    We therefore conclude that defendant's trial on an amended charge after he withdrew his guilty plea did not violate the prohibition against double jeopardy. We next address defendant's argument that the trial on the amended charge deprived him of the benefit of the bargain underlying his guilty plea. According to defendant, the possibility that he would be sentenced to probation was part of his bargain with the State and he is entitled to specific performance of that bargain, which would entail restoring his guilty plea to aggravated battery with the possibility of probation pursuant to section 12-3.05(d)(1) of the Code.

¶ 18    In *People v. Whitfield*, 217 Ill. 2d 177 (2005), our supreme court explained the benefit-of-the-bargain rule applicable to plea agreements. In *People v. Seyferlich*, 398 Ill. App. 3d 989, 992-93 (2010), we summarized *Whitfield* as follows:

"In [*Whitfield*], the defendant entered a negotiated guilty plea to first degree murder. He had agreed to serve a 25-year prison term. He claimed, however, that he had not agreed to serve the additional three-year term of mandatory supervised release (MSR) that became a part of his sentence by operation of law pursuant to section 5-8-1(d)(1) of the

Unified Code of Corrections (730 ILCS 5/5-8-1(d)(1) (West 2004)). The defendant did not argue that he had been promised he would not serve a term of MSR. Rather, he argued that the trial court was required to admonish him about MSR and that, because the trial court failed to do so, the plea agreement 'as evinced by the record' could not be deemed to make MSR part of the negotiated sentence. [Citation.] The defendant contended that he was entitled to enforce his bargain with the State. Recognizing that the MSR term could not legally be stricken, the defendant argued that, in order to best approximate his bargain with the State, his prison term should be reduced by three years.

Our supreme court noted that the 'benefit-of-the-bargain' theory espoused by the defendant was rooted in *Santobello v. New York*, [404 U.S. 257 (1971)]. [Citation.] The *Santobello* Court held that 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' [Citation.] Restating that principle, the *Whitfield* court held that 'if a defendant shows that his plea of guilty was entered in reliance on a plea agreement, he may have a due process right to enforce the terms of the agreement.' [Citation.] The *Whitfield* court agreed with the defendant's contention that 'his constitutional right to due process and fundamental fairness was violated because he pled guilty in exchange for a specific sentence, but received a different, more onerous sentence than the one he agreed to.' [Citation.]

In granting the defendant's request to reduce his prison term, the *Whitfield* court reasoned that 'adding the statutorily required three-year MSR term to defendant's negotiated 25-year sentence amounts to a unilateral modification and breach of the plea

agreement by the State, inconsistent with constitutional concerns of fundamental fairness.' "

¶ 19    Defendant argues that, because he was admonished that a sentence of probation was available, his bargain with the State included that sentencing option. The argument fails because this case is governed not by *Whitfield* but by our supreme court's later decision in *People v. Snyder*, 2011 IL 111382. In that case, the defendant pleaded guilty to intimidation and criminal damage to property. In exchange for her plea, other charges were dismissed. As in this case, the defendant in *Snyder* reached no agreement with the State about her sentence. *Id.* ¶ 6. When admonishing the defendant, the trial court neglected to mention that she might be required to pay restitution as part of her sentence. The *Snyder* court held that *Whitfield*'s benefit-of-the-bargain theory did not apply:

> "The significant difference between *Whitfield* and the present case is that Whitfield fully negotiated for a specific prison term, whereas, here, defendant pled guilty with no promise as to sentencing. She pled guilty in exchange for the State's agreement to drop the remaining charges against her, which the State has done. Therefore, she has received the full 'benefit' of her bargain. The remedy in *Whitfield* was fashioned to give Whitfield the 'benefit of the bargain' he made with the State. In *Whitfield*, we concluded that we should give weight to Whitfield's preference, rather than simply giving him an opportunity to withdraw his plea. [Citation.] However, nothing in *Whitfield* indicates that this specific enforcement remedy is available where, as here, a defendant enters a partially negotiated plea. *** *Whitfield*'s remedy—based on a 'benefit of the bargain' analysis—is inapplicable to defendant's partially negotiated plea because she received the benefit of the bargain she made with the State." *Id.* ¶ 30.

¶ 20    As in *Snyder*, defendant's agreement with the State was only that specific charges would be dismissed. The State kept up its end of the bargain. We therefore conclude that defendant is not entitled to the restoration of his guilty plea to aggravated battery with the possibility of probation pursuant to section 12-3.05(d)(1) of the Code.

¶ 21    Defendant finally argues that the one-act, one-crime rule bars convictions of both count I and count II because they were based on the same physical act. See *People v. King*, 66 Ill. 2d 551 (1977). The State agrees. The less serious conviction must therefore be vacated. See *In re Samantha V.*, 234 Ill. 2d 359, 379 (2009). Defendant argues that neither offense is more serious than the other; as charged here, aggravated battery is nonprobationable, but, for an imprisoned defendant like defendant here, aggravated domestic battery carries a four-year MSR term (730 ILCS 5/5-8-1(d)(6) (West 2014)) in contrast to the two-year MSR term for aggravated battery (*id.* § 5-8-1(d)(2)). The State argues that aggravated battery is more serious simply because it is nonprobationable. However, the State cites no authority to support its argument. We therefore remand to the trial court to determine which conviction to vacate. See *Samantha V.*, 234 Ill. 2d at 379-80.

¶ 22                                III. CONCLUSION

¶ 23    For the foregoing reasons, we remand to the trial court with directions that it vacate the less serious of defendant's two convictions.

¶ 24    Affirmed in part and remanded with directions.

¶ 25    JUSTICE HUTCHINSON, dissenting:

¶ 26    The majority omits several significant details from its summary of the facts relating to defendant's plea agreement with the State. The majority also stands on the false premise that defendant was somehow "permitted" to withdraw his plea, thus ameliorating any prejudice

resulting from the State's incorrect statutory citation. *Supra* ¶ 14. I disagree. I would hold that the initial prosecution terminated improperly when the trial court granted the State's motion to amend the indictment and that the subsequent prosecution was thus barred by the prohibition against double jeopardy. I therefore dissent.

¶ 27 Defendant was twice admonished—at his arraignment and again before the trial court accepted his plea—that he faced a range of penalties beginning with probation at the low end. The second admonishment was consistent with the terms that the parties agreed upon following a conference that they jointly requested under Illinois Supreme Court Rule 402 (eff. July 1, 2012).

¶ 28 Before defendant entered his plea, defense counsel raised a question about a discrepancy between the original charging instrument—an information—and the indictment. In count I of the information, defendant was charged with violating section 12-3.05(d)(1) of the Code, which was properly classified as a Class 3 felony. In count I of the ensuing indictment, defendant was again charged with violating section 12-3.05(d)(1), but this time the charge was improperly classified as a Class 2 felony.

¶ 29 The majority clarifies that a violation of section 12-3.05(d)(1) is properly classified as a Class 3 felony because it does not require proof of great bodily harm. *Supra* ¶ 4. This resolves the issue that was initially raised by defense counsel. However, the majority fails to recognize that the trial court responded to defense counsel's query by alerting the State to the issue surrounding the factual allegations charged in the indictment. Critically, this took place *before* the State agreed to the terms of the plea agreement.

¶ 30 In addressing the discrepancy between the classifications in the information and the indictment, the trial court first noted that count I of the indictment included an allegation that defendant caused "great bodily harm" to the victim. Second, and more notably for present

purposes, the trial court explained that "[a]ggravated battery is defined as (a)(4) which is great bodily harm and over the age of 60 as a Class 2 [felony]." The latter comment put the State on notice that the factual allegations contained in count I of the indictment corresponded to a different statutory subsection—(a)(4), as opposed to (d)(1).

¶ 31 The trial court's comments should have prompted the State to consult the Code and clarify that the agreement called for a conviction under subsection (a)(4), rather than a conviction under subsection (d)(1). In turn, this should have prompted the State to discover that probation is not an authorized sentence for a violation of subsection (a)(4). Neither of these things happened. Instead the State stood idly by while the trial court admonished defendant of the rights that he would be waiving by pleading guilty to count I of the indictment, which, as explained above, was charged under subsection (d)(1), a probationable offense. After the trial court accepted defendant's plea, it granted the State's request to dismiss the remaining three counts of the indictment. Two months later, having finally recognized its folly, the State filed a mislabeled motion seeking to amend the indictment.

¶ 32 The majority maintains that the trial court was correct to allow the amended indictment because any resulting prejudice to defendant was cured when he was given an opportunity to withdraw his plea. *Supra* ¶ 14. This overlooks the procedural posture of the proceedings. The remaining three counts of the indictment were already dismissed. Therefore, by allowing the State to amend the indictment (in my mind improperly), the trial court effectively voided the entire agreement, meaning that defendant's plea was rendered a nullity and the other three counts were reinstated. Contrary to the majority's holding, defendant was not given the option of somehow keeping his existing plea intact; after his existing plea was repudiated, he was given the option of entering a new plea under a different statutory subsection involving a different

sentencing range. If defendant had indeed selected this option, the trial court would have been required to deliver a new set of admonishments and the State would have been required to once again request a dismissal of the remaining charges. The majority cannot talk its way around the reality of this procedural quagmire. Defendant's plea was not voluntarily withdrawn, it was ripped up and discarded over his objection. The resulting prejudice is unavoidable.

¶ 33    Defendant is correct to argue that *Shipp* does not apply, because that case did not involve a plea agreement and thus did not involve the attachment of jeopardy. The majority dismisses this argument as "circular" and "unpersuasive." *Supra* ¶ 16. This seems rather short shrift for an issue that is apparently one of first impression, illustrated by the majority's reliance on *Banks*, a decades-old case from a different jurisdiction that neither party cited. In my view, once the trial court accepted defendant's plea and dismissed the remaining charges, the ship sailed on allowing the State to amend the indictment. I would grant defendant's request to reverse his convictions and sentences resulting from the trial and dismiss count I of the amended indictment.

---

**No. 2-17-0030**

---

| | |
|---|---|
| **Cite as:** | *People v. O'Brien*, 2019 IL App (2d) 170030 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 15-CF-281; the Hon. William P. Brady, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Phyllis J. Perko, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, David J. Robinson, and Sally A. Swiss, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---